UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANNA CUESTAS,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br><br>    Defendant. | Case No.   5:20-cv-08746-EJD<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 28, 29 |

Before the Court are Plaintiff's Motion for Summary Judgment and Defendant Commissioner of Social Security's ("the Commissioner") Cross-Motion for Summary Judgment. *See* Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("P MSJ"), Dkt. No. 28; Defendant's Cross-Motion for Summary Judgment ("D MSJ"), Dkt. No. 29.  On November 29, 2021, Plaintiff filed a reply.  *See* Plaintiff's Response to Defendant's Cross Motion for Summary Judgment ("Reply"), Dkt. No. 32.  Plaintiff argues that the Court should enter judgment under 42 U.S.C. § 405(g) and either (1) reverse the final decision of the Commissioner without remand for a rehearing and award benefits based on a finding of disability or (2) reverse the final decision of the Commissioner with a remand for a rehearing.  Having read the Parties' papers, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's cross-motion for summary judgment.

**I.      INTRODUCTION**

On June 4, 2018, Plaintiff filed her application for Title II, Social Security Disability Insurance ("SSDI") benefits, alleging disability beginning May 10, 2016.  Plaintiff's claim was initially denied on September 18, 2018, and upon reconsideration on February 5, 2019.

Case No.: 5:20-cv-08746-EJD
ORDER RE MOTIONS FOR SUMMARY JUDGMENT

Thereafter, Plaintiff filed a written request for a hearing. On April 21, 2020, the Administrative Law Judge ("ALJ") held a telephone hearing. All participants attended the hearing by telephone. Plaintiff requested an amended alleged onset date of May 1, 2018.

Following these administrative proceedings, the ALJ found Plaintiff not disabled. Administrative Record ("AR") at 14. Plaintiff timely requested review of the ALJ's decision by the Appeals Council, but on October 14, 2020, the Appeals Council denied that request. AR 1. This resulted in the ALJ's decision becoming the final order of the Commissioner.

## II.   LEGAL STANDARD

Under the Social Security Act ("the Act"), individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work, but cannot considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Social Security regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. The ALJ has an affirmative duty to assist the claimant in development the record at every step of the inquiry. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The five steps of the inquiry are:

1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled. If not, proceed to step 2. *See* 20 C.F.R. §§ 404.1520(b),

Case No.: 5:20-cv-08746-EJD
ORDER RE MOTIONS FOR SUMMARY JUDGMENT
2

1  416.920(b).

2  2. Is the claimant's impairment severe? If so, proceed to Step 3. If not, then the claimant is

3  not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

4  3. Does the impairment "meet or equal one of a list of specific impairments described in 20

5  C.F.R. § 404, Subpart A, Appendix 1? If so, then the claimant is disabled. If not, proceed

6  to Step 4. *See* 20 C.F.R. §§ 404.1520(d).

7  4. Is the claimant able to do any work he or she has done in the past? If so, then the claimant

8  is not disabled. If not, proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

9  5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not,

10  then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

"On judicial review, an ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). As the Supreme Court held in *Biestek*, the substantial evidence threshold is "not high" and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1154, 1157; *see also Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009) ("[Substantial evidence] is a highly deferential standard of review."); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) ("'Substantial evidence' means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support its conclusion." (quotation marks and citation omitted)). A court may set aside a denial of Social Security disability insurance benefits when the Commissioner's findings are "based on legal error or are not supported by substantial evidence in the record as a whole." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The court considers the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

### III. DISCUSSION

#### A. Summary of the Relevant Medical and Documentary Evidence

Plaintiff was born in November 1974 and was 43 years old at the time of her alleged onset date. AR 182. Plaintiff alleges disability beginning May 1, 2018, based on a combination of impairments including somatic symptom disorder, interstitial cystitis, carpal tunnel syndrome, chronic pain syndrome, morbid obesity, generalized anxiety disorder, major depressive disorder, and panic disorder. AR 16, 218–24. Plaintiff has a high school equivalency education and past work as an eligibility worker (DOT # 195.267-010), a "sedentary work," skilled job. AR 23.

The ALJ found at step one of the sequential analysis that Plaintiff did not engage in substantial gainful activity during the relevant period. At step two, the ALJ found Plaintiff has somatic symptom disorder, interstitial cystitis, chronic pain syndrome, morbid obesity, generalized anxiety disorder, major depressive disorder, and panic disorder. The ALJ found that these impairments are severe. AR 16. At step three, the ALJ found that Plaintiff's impairments do not meet or equal any listed impairments. AR 18. The ALJ found that Plaintiff has the following residual functional capacity ("RFC"):

> Lift 20 pounds occasionally; lift/carry 10 pounds frequently; stand and/or walk six out of eight hours; sit six out of eight hours; perform frequent balancing, stooping, kneeling, crouching, and crawling and frequent handling, fingering, and feeling. The claimant can perform work involving no more than occasional work around unprotected heights, including ladders/ropes/scaffolds, and heavy machinery. The claimant can understand, remember, and carry out simple instructions and can have occasional interaction with co-workers and the public.

AR 19.

At step four of the sequential analysis, the ALJ found that Plaintiff could not return to her past relevant work. AR 23. At step five, the ALJ found that Plaintiff could perform the occupations of Housekeeping Cleaner (DOT # 323.687-014), Photocopy Machine Operator (DOT # 207.685-014), and Marker (DOT # 209.587-034). AR 24.

Case No.: 5:20-cv-08746-EJD
ORDER RE MOTIONS FOR SUMMARY JUDGMENT
4

### 1. Medical Evidence

Dr. Steve Petty evaluated Plaintiff on November 5, 2018, for tingling and pain in her hands and locking in her fingers. AR 1167. Dr. Petty noted that Plaintiff was anxious and tearful, had moderately reduced range of motion in her neck, with tenderness and muscle spasms in the trapezius and a mildly positive Spurling's sign to the right with discomfort in the right shoulder. Dr. Petty noted a positive median nerve compression test in both of Plaintiff's hands. AR 1168. Dr. Petty opined that Plaintiff had bilateral carpal tunnel syndrome. Dr. Petty also opined that Plaintiff should wear wrist splints nightly for 6 to 8 weeks and avoid any repetitive hand activities. AR 1169.

Psychologist Megan Stafford evaluated Plaintiff on December 20, 2018, on behalf of the Commissioner. Dr. Stafford noted that, as described by Plaintiff, Plaintiff was "severely depressed," was not interested in her former activities, and had stopped bathing and leaving her house. AR 1146. Plaintiff also told Dr. Stafford that she had experienced anxiety attacks since 1998 and that she had been treated for somatic disorder. Plaintiff explained that when she gets upset and anxious, her physical pain gets worse. AR 1147. Plaintiff reported needing reminders to get to medical appointments. AR 1148. Dr. Stafford noted that Plaintiff had a dysthymic mood and cried throughout the evaluation. AR 1149. Dr. Stafford opined that Plaintiff had unspecified depressive disorder and generalized anxiety disorder. She opined that Plaintiff would be mildly limited in her ability to (1) perform detailed and complex tasks, (2) interact with co-workers, supervisors, and the public, (3) maintain regular attendance in the workplace, (4) complete a normal workday without interruptions from a psychiatric condition, and (5) deal with the usual stress encountered in the workplace. AR 1150.

Dr. Robert Tang examined Plaintiff on January 15, 2019. Plaintiff told Dr. Tang that she had been off work since May 2018 due to chronic pain syndrome and mental health issues. Dr. Tang noted that Plaintiff was diagnosed with endometriosis and interstitial cystitis with chronic pelvic pain. Plaintiff also reported chronic low back pain with right leg radiculopathy and a history of left hip bursitis, cervical spine pain, and bilateral carpal tunnel syndrome. AR 1153.

1    Plaintiff reported an ability to slowly care for her personal needs and episodically complete light
2    activities of daily living.  AR 1153.  Dr. Tang noted that Plaintiff had some lumbar discomfort
3    when rising from a supine position.  AR 1154.  Plaintiff had a somewhat slowed ability to handle
4    small objects and had positive Tinel's and Phalen's signs involving her fingers on her left hand
5    and her right wrist.  Dr. Tang opined that Plaintiff had accumulative chronic pain syndrome
6    involving chronic bladder and pelvic pain and lower back pain with right radiculopathy and a
7    history of right hip bursitis.  AR 11156.  Dr. Tang further opined that Plaintiff had carpal tunnel
8    syndrome in both wrists, which was being conservatively treated.  Dr. Tang determined that
9    Plaintiff should be limited to sitting/standing/walking up to 6 hours on an alternating basis.  AR
10   1156.  Dr. Tang determined that Plaintiff could lift 20 pounds occasionally and 10 pounds
11   frequently with frequent climbing, balancing, crouching, kneeling, and crawling, but that she
12   should be limited to frequent handling, fingering, and feeling and that work around heights and
13   heavy machinery should be limited.  AR 1156–57.

14   Hand specialist Dr. Leonard Gordon evaluated Plaintiff on September 16, 2019, as part of
15   the workers compensation process.  Dr. Gordon noted that he had also examined Plaintiff on April
16   6, 2019, and at that time, Plaintiff had a positive Tinel's sign in both wrists.  AR 1202.  Dr.
17   Gordon opined that Plaintiff had bilateral carpal tunnel syndrome, and that this condition resulted
18   from cumulative trauma from Plaintiff's work over the years.  AR 1202–03.  Dr. Gordon
19   determined that Plaintiff could return to the writing, typing, manipulative tasks, lifting, and
20   gripping that were required for her prior job, but that continuing these activities would cause
21   further deterioration of her condition.  AR 1209.  Dr. Gordon opined that to prevent worsening of
22   her impairment, Plaintiff should do between 4 and 6 hours of computer work, manipulative tasks,
23   and repetitive hand use interspersed throughout an 8-hour work shift and could lift up to 10
24   pounds on a moderately repetitive basis.  AR 1209.

### 2. Hearing and Testimonial Evidence

#### a. Plaintiff's Testimony

Plaintiff testified that she stopped working in May 2018 due to her chronic pain and severe anxiety. AR 37. She testified that she can grocery shop but cannot carry the groceries to her car or into her house and always needs assistance from store personnel or her family to accomplish this. AR 40. Plaintiff has help from her family to do household chores. AR 41. She takes pain medications which help with some of the pain, but also result in side effects, including dizziness and nausea. AR 43–44. Plaintiff avoids driving long distances because it causes a flare of pain in her legs. AR 45. She cannot bend to pick up heavy items, and she cannot do any other activities on a day when she does grocery shopping because this task causes so much fatigue. AR 46. Plaintiff rarely drives herself anywhere except for medical appointments and to the store. AR 48. She does not shower as often as she used to because she has lost her balance and finds it hard to reach. AR 50. Plaintiff does cook but must take breaks every few minutes because long periods of standing and repetitive use of her hands are painful. AR 51. She needs help from her family to do laundry and cleaning. AR 52. Her depression has caused her to stop socializing and prevented her from enjoying her former hobbies. AR 53. Plaintiff has injections for her pain, which help for a few weeks, but she still cannot sit for more than a few minutes at a time because of pelvic pain from interstitial cystitis. AR 54. Plaintiff testified that her carpal tunnel syndrome makes it painful to write or type. AR 56. She tried physical therapy but had a panic attack and had to stop the process. AR 57. Plaintiff has received counseling and medication for her mental health. AR 58.

#### b. Vocational Expert Testimony

The ALJ called Linda Ferra to testify as a vocational expert ("VE") at the April 2020 hearing. The ALJ asked the VE to consider an individual able to perform light work, stand and walk for 6 hours, sit for 6 hours, do frequent handling, fingering, and feeling, work no more than occasionally around unprotected heights and heavy machinery, able to understand, remember, and carry out simple instructions, and able to occasionally interact with coworkers, the public, and

Case No.: 5:20-cv-08746-EJD
ORDER RE MOTIONS FOR SUMMARY JUDGMENT
7

1   supervisors. AR 59–60. In response, the VE identified the occupations of Housekeeping Cleaner
2   (DOT # 323.687-014), Photocopy Machine Operator (DOT # 207.587-034), and Marker (DOT #
3   209.587-034). The VE testified that a person who would be absent 2 times each month could not
4   sustain competitive employment. AR 60. In answer to questions from the ALJ, the VE
5   acknowledged that the DOT does not specifically address the amount of interaction with
6   coworkers, supervisors, or the public in terms of occasional or frequent. AR 62–63. Instead, the
7   VE's testimony that the three identified jobs would be suitable for someone limited to occasional
8   social interactions was based on the VE's experience in observing and analyzing those jobs. AR
9   63–64.

10   Plaintiff's attorney asked the VE to change the manipulative limitations in the ALJ's
11   hypothetical from frequent to occasional handling, fingering, and feeling, and the VE replied this
12   would eliminate the ability to perform the three identified jobs. AR 61. A person off task for
13   more than 10 percent of the workday could not sustain competitive employment. AR 62. The VE
14   also acknowledged that she relies on data from the Bureau of Labor Statistics ("BLS") and that the
15   BLS data is generally more current than what is included in the DOT. AR 65. The VE stated that
16   she had no data to refuse the BLS statistic indicating that for the job of Photocopy Machine
17   Operator, up to 82 percent of the people who do that job have contact with others constantly or
18   most of the time. AR 65–66. For the job of Marketer, the BLS data indicated that 90 percent of
19   people performing that job had contact with others most of the time or constantly. The VE stated
20   that she had no data to refute that statistic. AR 66–67.

21   **B. Analysis**

22   Plaintiff argues that the ALJ improperly addressed the medical opinions, improperly
23   rejected Plaintiff's testimony, and improperly performed step five of the sequential analysis. The
24   Court disagrees. The ALJ reasonably and properly resolved the conflicts in the opinion evidence
25   consistent with the new regulations, gave specific and valid reasons to discount Plaintiff's
26   subjective allegations, and duly relied on the testimony of a VE.

27

28   Case No.: 5:20-cv-08746-EJD
ORDER RE MOTIONS FOR SUMMARY JUDGMENT
8

### 1. The ALJ's Assessment of the Medical Opinions

The ALJ resolved the conflicts in the medical opinions and prior administrative medical finding by concluding that state agency physician K. Mohan, M.D. and consultative examiner Robert Tang, M.D. were more persuasive than other doctors. Because Plaintiff applied for benefits June 2018 (after March 27, 2017), the ALJ applied a new set of regulations for evaluating medical evidence.

Prior to the current regulations, Ninth Circuit law held that an ALJ must provide clear and convincing reasons to reject a treating physician's uncontradicted opinion and must provide specific and legitimate reasons to reject a treating physician's contradicted opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citations omitted). However, under the current regulations, "the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion.'" *V.W. v. Comm'r of Soc. Sec.*, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)); *see also P.H. v. Saul*, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (noting that the 2017 regulations eliminate the deference given to treating physicians for claims filed after March 27, 2017). Some district courts have continued to apply the "clear and convincing" and "specific and legitimate" standards as a "benchmark against which the Court evaluates [the ALJ's] reasoning." *See, e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020). However, others, including courts in this district, have not. *See V.W.*, 2020 WL 1505716, at *13.

"It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of an ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis of medical opinions, or some variation of those standards." *Joseph Perry B. v. Saul*, 2021 WL 1179277, at *3 (C.D. Cal. Mar. 29, 2021). "However, the Ninth Circuit has recognized that the Social Security Administration may, by regulation, override the court's own prior interpretations of the Act." *T.N.*, 2021 WL 4553581, at *4. For example, in *Lambert v. Saul*,

Case No.: 5:20-cv-08746-EJD
ORDER RE MOTIONS FOR SUMMARY JUDGMENT
9

the Ninth Circuit addressed the conflict between its precedent establishing a presumption of continuing disability after a prior disability determination and the Social Security Administration's interpretation of the 1984 Reform Act, which found that no such presumption was available under the statute. 980 F.3d 1266, 1268 (9th Cir. 2020). In deferring to the agency's interpretation despite its own contrary precedent, the *Lambert* court noted that there are limited circumstances in which a court's own precedent is not controlling, including the intervening higher authority of an administrative agency's authoritative and reasonable interpretation of a statute. *Id.* at 1274. Like the *Lambert* court, this Court must "defer to the new regulations, even when they conflict with judicial precedent." *Timothy Mitchell B. v. Kijakazi*, 2021 WL 3568209, at *5 (C.D. Cal. Aug. 11, 2021).

Under the current regulations, the Commissioner must evaluate the persuasiveness of all medical opinions based on (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(a), (c)(1)–(5). "The two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that 'form the foundation of the current treating source rule.'" *V.W.*, 2020 WL 1505716, at *13 (quoting Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853). When evaluating medical opinions, the Commissioner "may, but [is] not required to," explain how the Social Security Administration considered the remaining factors listed in paragraphs (c)(3) through (c)(5) of the regulations, as appropriate. 20 C.F.R. § 416.920c(b)(2).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" *V.W.*, 2020 WL 1505716, at *14 (alteration in original) (citation omitted). "Further, the ALJ is required to specifically address the two most important factors, supportability and consistency." *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

Case No.: 5:20-cv-08746-EJD
ORDER RE MOTIONS FOR SUMMARY JUDGMENT
10

In applying these new regulations, the ALJ correctly focused on the greater persuasiveness of Dr. Mohan's opinion limiting Plaintiff to a range of light work. As the ALJ explained, evidence from Dr. Mohan's examination revealed that while Plaintiff exhibited a positive medial nerve compression test bilaterally, this test also showed that Plaintiff's hands were "neurovascularly intact" (*i.e.*, nerves and blood vessels intact). AR 20, 86–87, 1032, 1168. Dr. Mohan also noted that there was no other evidence such as abnormal grip strength that would support greater limitations. AR 87. Indeed, Plaintiff's treating records demonstrate that Plaintiff was largely normal on examination, including 5/5 strength. AR 20. Likewise, Dr. Petty found no neurovascular or other anomalies and no atrophy in Plaintiff's arms. AR 1168.

Similarly, during a consultative examination, Plaintiff exhibited full 5/5 strength in both arms and legs, and the examiner, Dr. Tang, opined that Plaintiff could perform light work with frequent manipulative abilities despite a diagnosis of carpal tunnel syndrome and positive Tinel's and Phalen's signs. AR 22, 1156–57. While Dr. Tang referred to Plaintiff "alternating sitting/standing/walking status up to six hours," there is no indication that Plaintiff needed to alternate between these activities for any set length of time or at will. AR 1156. Rather, Dr. Tang explained that Plaintiff had 5/5 strength in all four extremities, negative straight leg raising test, normal arms and legs, and normal ranges of motion. AR 115–56. Dr. Tang thus did not opine that Plaintiff needed a sit/stand option—the word "option" was not even used. Accordingly, the ALJ did not need to address this issue or incorporate a sit/stand option in Plaintiff's RFC. *See* Social Security Ruling 96-9p, 1996 WL 374185, at *7 (July 2, 1996) ("The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.").

The ALJ properly found that Dr. Gordon's opinions were not persuasive. AR 22. Dr. Gordon opined that Plaintiff should be limited to 4–6 hours of computer work and repetitive hand use, and 10-pound lifting capacity on a moderately repetitive basis. As the ALJ explained, the record did not support these limitations.

> [Dr. Gordon's] opinion is not persuasive with respect to [the] limitation of 4–6 hours of computer work or to lifting 10 pounds because it is without correlation to the associate impairment resulting

Case No.: 5:20-cv-08746-EJD
ORDER RE MOTIONS FOR SUMMARY JUDGMENT
11

> in such an extreme limit or other evidence to support the opinion. Neither does the treatment for chronic pain which the claimant availed herself of support such limitation to between four and six hours of computer work. Specifically, the record demonstrates that the claimant was prescribed a regimen of Norco as pain control medication, that she sought multiple refills of such indicated inefficacy after which her providers advised her to stop Norco for daily use, taper off by reducing the frequency, recommended non-narcotic pain medication, and referred her to a chronic pain program; the referral was closed when, *she failed to keep or cancelled multiple scheduled appointments* ("no show dozens and dozens of appointments with numerous providers and classes over a period of 7 years since 2011").

AR 22 (emphasis added); *see also* AR 312, 337, 345, 356, 360, 367, 391–92, 452, 509, 526, 1045, 1061, 1068. Further, the ALJ was not required to consider Dr. Gordon's prophylactic recommendations, which were made in the worker's compensation context. *See La Cour v. Astrue*, 2010 WL 4056091, at *9 (concluding that the ALJ was permitted to disregard prophylactic restrictions made pursuant to a worker's compensation claim because the standards for worker's compensation are much different from SSI standards). The ALJ thus properly rejected Dr. Gordon's opinion as unpersuasive.

Finally, the ALJ properly did not factor Dr. Petty's recommendation that Plaintiff wear wrist splints at night for 6–8 weeks and avoid repetitive hand activities into her RFC as there was no indication that these were a lasting limitation.

Accordingly, because the ALJ properly relied on and assessed the "persuasiveness" of medical opinions as required by the new regulations, the ALJ's RFC determination is supported by substantial evidence.[1]

### 2. The ALJ's Assessment of Plaintiff's Subjective Allegations

The ALJ properly discounted Plaintiff's subjective allegations. As an initial matter, Congress prohibits an ALJ from granting disability benefits based solely on a claimant's subjective complaints. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or

---

[1] The Court rejects Plaintiff's argument that the new regulations require the ALJ to provide "specific and legitimate" reasons supported by substantial evidence to reject a treating or examining physician's opinion. On the contrary, the new regulations require the ALJ to focus on the "persuasiveness" (not the "weight") of medical opinions. Importantly, the new regulations eliminate the prior hierarchy of medical opinions.

Case No.: 5:20-cv-08746-EJD
ORDER RE MOTIONS FOR SUMMARY JUDGMENT
12

other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. §§ 404.1529(a), 416.929(a) (stating that while an ALJ will consider all of a claimant's statements about symptoms, statements about pain or other symptoms "will not alone establish" claimant's disability). Indeed, an ALJ "cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to [the Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, an ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *See* Social Security Ruling (SSR) 16-3p. An ALJ's assessment must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc).

First, the ALJ did not deny that Plaintiff has significant limitations and could only perform a limited range of light work involving simple tasks and only occasional social interaction. AR 19. The ALJ thus listened to, and credited, Plaintiff's testimony regarding her symptoms. Further, in discounting some of Plaintiff's allegations, the ALJ properly noted that the objective medical evidence showed largely normal physical status and minimal treatment. AR 20–21; *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Thus, the medical opinions reviewed by the ALJ supported the conclusion that Plaintiff could perform a range of light work.

Second, Plaintiff's chronic pain syndrome and interstitial cystitis appeared to respond to treatment that included cystoscopies. AR 20, 340, 1039–40, 1045, 1153, 1163 (Plaintiff reported good results from treatment and repeated the procedure); *see also Stewart v. Colvin*, 674 F. App'x 634, 636 (9th Cir. 2017) (ALJ properly discredited the claimant's subjective complaints regarding symptoms where the "ALJ specifically noted the medical evidence, including [the claimant's] improvement"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (finding that the

Case No.: 5:20-cv-08746-EJD
ORDER RE MOTIONS FOR SUMMARY JUDGMENT
13

1  claimant's response to conservative treatment undermined his reports regarding the disabling
2  nature of his pain).
3        Third, Plaintiff failed to comply with medical advice and attend the recommended chronic
4  pain program. *See Sager v. Colvin*, 622 F. App'x 629, 629 (9th Cir. 2015) ("[The claimant] failed
5  to comply with treatment recommendations to quit smoking, take prescribed medications, have
6  epidural injections, consistently perform a home exercise program and consider spinal cord
7  simulation treatment. This noncompliance undermines his claims of debilitating pain.");
8  *Tommasetti*, 533 F.3d at 1039.
9        Accordingly, the ALJ properly assessed Plaintiff's testimony.

### 3. ALJ's Step-Five Finding

Plaintiff last argues that the ALJ's step-five analysis was unreasonable. Specifically, Plaintiff argues that two of the occupations the ALJ found that she could perform at step five—housekeeping cleaner and marker—require more than six hours of standing and walking in an 8-hour day and are improper for someone with Plaintiff's limitations as found by the ALJ. The Court disagrees.

There was no conflict in the vocational evidence because the Dictionary of Occupational Titles ("DOT") does not specify the standing and walking requirements of light jobs. *See, e.g.*, *Teresa M. v. Kijakazi*, 2021 WL 2941978, at *9 (C.D. Cal. July 13, 2021) ("Contrary to Plaintiff's argument, limiting standing or walking to six hours a workday is not inconsistent with light work."); *Lewis v. Berryhill*, 2017 WL 3498625, at *5 (C.D. Cal. Aug. 15, 2017) (finding that "there was no conflict" between a limitation to standing/walking for up to only four hours and the DOT description for the light jobs of electronics worker and bench assembler). Thus, the VE testimony that Plaintiff could perform those occupations despite her ability to stand and walk for only six hours in an 8-hour workday was reasonable. It did not trigger the ALJ's duty to develop the record because it did not conflict with the DOT. Likewise, any apparent conflict between the vocational expert's testimony and the Occupational Outlook Handbook or other publications did not trigger the ALJ's duty to further develop the record. *See Citizen v. Saul*, 830 F. App'x 224,

225–26 (9th Cir. 2020); *see also Hatfield v. Berryhill*, 768 F. App'x 629, 632 (9th Cir. 2019) ("Although the full range of light work generally requires six hours of standing, the Social Security Administration has stated, and this Court has reiterated, the requirements of occupations listed in the Dictionary of Occupational Titles are maximum requirements, not the requirements of each particular job within that occupation."); *Devore v. Comm'r of Soc. Sec.*, 2015 WL 3756328, at *4 (E.D. Cal. June 16, 2015) ("[T]he limitation of four hours standing/walking is not necessarily inconsistent with the 'light work' jobs identified by the DOT.").

Plaintiff's citation to vocational data from additional vocational sources does not change the analysis. The ALJ need only resolve conflicts between the VE's testimony and the DOT, not other sources of job information. *See, e.g.*, *Dennis B v. Saul*, 2020 WL 7264460, at *3 (C.D. Cal. Dec. 10, 2020). Because the ALJ identified and resolved the apparent conflict with the DOT, the ALJ satisfied her duties. Accordingly, the ALJ did not err at step five.

### IV.  CONCLUSION

The decision of the Commissioner is affirmed. The Court **GRANTS** Defendant's cross-motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment. This case is dismissed with prejudice. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 29, 2022

EDWARD J. DAVILA
United States District Judge

Case No.: 5:20-cv-08746-EJD
ORDER RE MOTIONS FOR SUMMARY JUDGMENT
15